We shall call our second case of this morning, number 17-1469, Berardelli, the Allied Services Institute of Rehabilitation Medicine, Mr. Helfer, and Mr. Convoy. Take your time. Take your time. Take your time. Take your time. Take your time. Take your time. Take your time.  Whenever you're ready. Yes, sir. Good morning, and may it please the court. My name is Arlie Helfer, and I'm here arguing for the appellants, the Berardellis. Could you speak up, please? Yes. And also, do you want to reserve time for rebuttal? I would like to reserve three minutes for rebuttal. Yes, sir. I'd like to begin by addressing the issues raised in the court's letter of last Thursday. First of all, whether there's a reason not to use the standards in the service animal regulations in connection with a Rehabilitation Act claim. Here, Allied, in its supplemental letter brief, has offered three reasons it contends that such standards shouldn't apply. First, they cite the Southeastern Community College v. Davis and Alexander v. Choate decisions of the Supreme Court. What those cases teach us is that there is an affirmative responsibility on the part of entities receiving federal funds to make reasonable accommodations. And here, they are not required to engage in fundamental alterations of their programs. That should not be a concern here for two reasons. First, the regulations at issue expressly provide for a defense that they should not apply if they fundamentally alter the programs. And that's Section 36-302A. In addition to that, the district court here found, at summary judgment, that not only had Allied not raised any kind of affirmative defense based on fundamental alteration, it also didn't present any evidence of fundamental alteration. So that should not be a concern here. I'd like to understand better your argument about the role of the exceptions. Because in your reply brief, you seem to argue that the reason there's not strict liability is because of the presence of these two exceptions. Is it then your position that there is, and this takes us to the second part of our question last week, and that is, is it your contention that there's not a distinct requirement of a finding of denial of meaningful participation in education? Okay, I'll take that question. In the first part, with regard to the exceptions, here, as Albenega explained, the service animal regulations represent a holistic view of the Department of Justice about the application of the reasonable modification framework in connection with these cases. So not only are there the two exceptions in the regulation, the service animal regulation, which would allow an entity to exclude an animal that's either not housebroken or is out of control, but there are also defenses available under the regulations, under the law, for issues where there would be a direct threat or also a fundamental alteration of a program. But you're not suggesting that we're, in the context of service animals, that the requirement that we have identified in our case law and that appears in the text of the statute, that is, that there be a showing of the denial of meaningful participation in education, that we forego that if the claim is reasonable accommodations involving the service animal? Yes. The reason why you do not need to reach or make a showing of meaningful access is that the exclusion of the service animal itself is the discrimination here. I believe the Ridley School District case in stating the elements of a Section 504 claim under the Rehab Act provides in the fourth element that you're either denied participation in or denied benefits or otherwise discriminated against by the entity that's receiving the federal funding. And here, in regard to the service animal, you have a very unique situation. Courts have recognized that individuals using service animals function as a unit. There's case law to the effect that excluding an individual service animal is tantamount to excluding the individual and denying that individual access. Don't we take from the Supreme Court's decision in PGA Tour, as well as our repeated statements, that there has to be a finding of denial of meaningful participation, that those are separate issues, that that is something that must be shown, and therefore that would be an appropriate part of any jury instruction, but the service animal regulation, I thought you were arguing, goes to the separate question of the reasonableness of the accommodation, not the necessity of the accommodation. Am I misunderstanding you? Well, I think we are arguing that it goes to the reasonableness, and yes, there's a presumption of reasonableness unless the exceptions apply. But here it also, under the standards involving discrimination under Section 504, by denying the animal access, by denying the person access with the animal, you're discriminating against that individual based on that individual's disability. But doesn't there have to be a meaningful participation aspect to it? Much of Mr. Conaboy's summation in the case had to do with meaningful participation. Did you object to the jury instructions regarding meaningful participation? I don't believe the trial counsel objected to those instructions. Because those instructions were given by the court, that that was a key aspect of the case, that if she was not denied meaningful participation and the benefit of the education, she could not recover. And if those were not objected to, then don't you believe your argument is foreclosed? I don't believe the argument is foreclosed because I believe that by failing to instruct the jury or give any guidance to the jury on the issues, the standards that would apply— Well, that's a different issue. That's a different issue. But to Judge Krause's question about do you not also think that meaningful participation is an aspect of the case, and your statement that no, you don't, I believe that argument is foreclosed. Well, I don't have an answer for you on that. Maybe that was more my statement than a question. I take it what you're talking about is are the animal regulations, they speak to the reasonableness of the requested accommodations. And in effect, doesn't this come down to whether the accommodations requested are reasonable? That's correct, Your Honor. I just said to forget the legalese for the moment. Right. This is a failure to accommodate case. And in a failure to accommodate case, I think as this Court said in Muhammad, what the plaintiff has to show is that the plaintiff requested a reasonable accommodation and it wasn't given, and that's it. And so I don't believe that the issue of the access is in play here. Once you find that the requested accommodation was reasonable and it was denied in a failure to accommodate case— But PGA TOUR dealing with the ADA says that it's a three-part inquiry. You're looking at the reasonableness of the accommodation, separately the necessity of the accommodation, right, in the ADA context, the denial of full enjoyment of those privileges or benefits, and then the third category of whether there is some exception, like a fundamental alteration. That should, if I understand your argument, that the two standards under the RA and the ADA are the same, that should be mapping on as well to the denial of meaningful participation in the educational context, right? Well, I think Albanyga discusses this to a degree in terms of IDEA and the issue of access to a free, appropriate public education. I know that was a Title II case. But there the court said that the issue isn't whether the service animal is educationally necessary to permit that kind of participation in the educational process. Rather, it's a fundamental form of discrimination when the school decides on an arbitrary basis to exclude the service animal. Now, if this were a case where a student had a mobility impairment and was trying to attend school in a wheelchair, and the school said, well, we don't want you to have a wheelchair because we can carry you from class to class and you'll be able to participate fully in the process, that would still be disability discrimination because they're not respecting the choices of the individual as to how that individual is going to address her impairment. Well, let's assume that the regulations, if anything, go to the question of reasonableness of an accommodation. And you are arguing that the jury wasn't instructed as to the meaning of reasonableness because there's this regulation in place. Even given the case law that says that reasonable accommodation and reasonable modification are interpreted generally the same way. Here we have a regulation that was promulgated by a different agency dealing with a different statute that has slightly different wording. The statute provides different remedies than the Rehabilitation Act and has different coverage than the Rehabilitation Act. Even if we were inclined to give Chevron deference to the Department of Justice's the term reasonable modification under the ADA, why would that regulation informing that definition be one that we would import to a different statute that involves a different rulemaking agency? Well, here you have a situation where, as you noted, these statutes courts say again and again are construed in peri materia. They have the same liability standards. And here it boils down to a choice. Are you going to send out a jury with an instruction about reasonable accommodations that makes no reference to any standards involving the use of service animals? Or are you going to look to what's available, and that is the Department of Justice regulations, the considered opinion of an expert agency charged with coordinating and enforcing all of the anti-discrimination laws, including the Rehabilitation Act, as to how the use of a service animal alters that framework. Here the jury came back with a question to the judge. They've needed some kind of guidance on what happens when a service animal is involved in the case. And here the judge refused to give them any assistance in that matter. And that's what we contend was prejudicial error. Do we know why Judge Mannion refused to give this instruction? No, we don't. In fact, it's very perplexing because at summary judgment, he authored an opinion that expressly said that these standards would apply to allied in the context of the Section 504 count. And then at the charging conference, he seemed to pull an about face. After trial counsel had presented the evidence and made the arguments in the case, he sort of pulled the rug out from under them. And the reasons he gave, frankly, didn't seem to be very good ones. One was that the analysis he did in his summary judgment opinion involved the Title II regulation. But as we know, the Title II and Title III regulation are virtually identical in all material respects. And beyond that, he said that it might establish some kind of a strict liability standard. And as we argued and as Judge Krause pointed out, there are exceptions here. There are available defenses. It's simply that allied never pled those defenses and didn't make those arguments, despite what the judge had said the applicable legal standards would be at summary judgment. I think that's a good segue. I'm sorry, go ahead. Sorry, one more question. What do we do with the fact that there are Department of Regulations, I mean subpart E, dealing with post-secondary education and prohibiting, in that context, a ban on animals on campus? There's not a similar regulation from DOE dealing with subpart D, that is for elementary and secondary school. Should we ascribe significance to that? Here, I had not looked at that issue, but it strikes me that here we have a situation where the absence of a ban in primary education shouldn't be dispositive. It's not as though the Department of Education has directly spoken to the issue. So I don't believe that the regulations that DOJ promulgated would be in conflict with the Department of Education's regulations. Thank you. Mr. Conaway, please. Thank you. Thank you, Your Honors. May it please the Court, James Conaway on behalf of Allied Services. Don't the service animal regulations for public accommodations apply to you? Your Honor, I think that the service animal regulations for public accommodations apply on a case-by-case basis. The Court did determine Allied Services is a place of public accommodation, and there are public accommodation regulations under the DOJ. So why create some sort of different standard of liability between the Americans with Disabilities Act and the Rehabilitation Act? Your Honor, I'm not asking the Court to apply or to create a different standard. I'm asking the Court to do what Judge Manning did in this case, and that is to appropriately apply the 504 standard, the question of whether or not this handicapped individual was denied meaningful participation in an impulsive program. That begs the question that we ended up with near the end. He opines on summary judgment as to a regulation being applicable, and then refuses to give an instruction. The jury comes back and, in effect, asks for help, and he still refuses to give the Chapter 36 public accommodation charge. I don't get it. I don't understand. What happened between summary judgment and the end of trial? I think between summary judgment and the end of trial, Your Honor, Judge Manning had an opportunity to look at all of the evidence and to realize that this is a failure-to-accommodate case. Were there accommodations that were reasonable? But there is a standard by law that should be given deference as to whether an accommodation is required in this situation, and the standard would be very helpful to the jury, would it not? Well, the standard, Your Honor, is to be given deference under the ADA. That's never been extended by any court, at least through, I think, thorough research on the part of both counsels, that that's been extended to Section 504, and I think that that may be a question that you have to answer. But why should it be extended? Well, in the scope of an education-based case, you have to look at a number of factors. Deference to the decision-making at the school district level, whether there were other accommodations that allowed for meaningful participation and meaningful access of the student to the education program. And let's not lose sight of the fact that in this case, Your Honors, this little girl attended the DePaul School and did well. This is not a case where we're coming in here and there's injunctive relief requested. That's not the issue of doing well. The issue is that she has a condition that it would be very helpful to have a service dog with her who could, in effect, telegraph that there was a seizure coming on. But see, Your Honor, that's the danger in providing the DOJ regulation, is you're establishing now a strict liability standard, and that's not the standard under 504. What's the strict liability here about? Well, you're offering an argument, Your Honor, or suggestion at least, that says that the service dog is the only reasonable accommodation available in this case. Well, what other accommodation was offered here other than the dog had to have at one point a dandruff-proof shirt because there was a concern or a statement that some students were allergic to the dogs? Your Honor, on the record in this case, there were multiple accommodations that the DePaul School provided. They provided assistance with the little girl in sticking to her ketogenic diet. They allowed her to take naps if necessary during the school day if she felt fatigued. But those are different. The accommodation here requested is to have some means to alert as to whether a seizure is going to take place. And none of those things are relevant to that, are they? Well, I think, Your Honor, they are. And the proof in this case as well was that during the first two years of the schooling, the seizures were taking place at night, not during the school day. We also have proof in the case that the little girl was out and about in the community without her service dog. By the second year, she missed 65 days of school. Ultimately, we're not going to decide the question of whether the accommodation was reasonable. That's a jury question, right? Correct. You agree, as I take it from your brief, you agree that the term reasonable modification under the ADA and reasonable accommodation in the Rehabilitation Act context have the same meaning. Correct, Your Honor. So we know we have a regulation, albeit passed by DOJ, but one that informs the definition of reasonableness, of reasonable modification. Why then would there be any question about that same regulation being relevant to define the term reasonable accommodation, which, as you just said, has the same meaning as reasonable modification? And again, I would point to the fact, Your Honor, that this is an education-based case, and it has to be looked at on a case-by-case basis under all of the circumstances. And Judge Mannion mentioned that. But isn't that a matter of argument? Isn't that a matter for you to argue to the jury after they've been told that by law there is some entitlement, and then you argue that maybe she wasn't denying any participation, or it would have been difficult, or, you know, you can argue all these other things, but why shouldn't the jury be told to stand? Your Honor, you have to look at the jury instructions as a whole and decide whether they fairly and adequately frame the issues for the jury. And again, this was a failure-to-accommodate case. Judge Mannion told both counsels... Well, but if you're a juror in this case, wouldn't you say, well, does she have a right to have it on? In effect, that's what the... That's what the question was. If they came back and asked for further advice, instruction, that would have been the perfect opportunity to say, okay, I'll read what the accommodation regulation says. Well, I think Judge Mannion made clear during the conference on that question is the question was not entirely clear as to what it was asking for and where was that question coming from from the jury. Were they looking at something that they had read in the paper or seen on TV or something about a service dog going into a restaurant or something along those lines? Again, if you're a juror and the case goes to you and you have been given no instruction as to whether, as a matter of law, there is any entitlement on anybody to have a service dog anywhere, let alone in school, how are you going to decide this case? And this is a public accommodation here? It is. It is. But the question was, and the plaintiffs had the burden of proving, that attendance with the service dog was required to allow meaningful participation in the case. There was no proof of that. That conflates two different showings that the Supreme Court has indicated need to be made. One is the meaningful participation in education in the Rehabilitation Act context, which parallels the denial of full enjoyment of benefits in the Americans with Disabilities Act context. That showing needs to be made, but there also needs to be a showing of the reasonableness or unreasonableness of the accommodation in question. Aren't those two separate things? Yes, and didn't the district court, as I take it your argument too, seems to be conflating those two into one? That because you think there was evidence in the record that would support a jury determination of there was no denial of meaningful participation, that that answers the question of reasonable accommodation. But aren't those two separate things under PGA TOR? Well, I think that in this case, Your Honor, that was a question for the jury and that the instructions as a whole frame those issues for the jury. They were allowed to determine whether this little borough was discriminated against. That was the first question on the verdict slip. And the judge instructed them as to what they had to do. Then that really segues to Judge Gentile's question. Wouldn't it be helpful to a juror to know what the lay of the land is with regard to what's required of a school pertaining to public accommodation? Judge, I don't know that I'm going to convince you of my argument on that in fairness, but under the circumstances of this case, Judge Mannion had the best view of it. He sat through the trial, he sat through the evidence, and he was able to frame jury instructions that he felt were framed by the evidence and that the jury was to decide. And again, this is an education-based case. We have to look at the decision. And the Supreme Court says in the Regents of Michigan case that I've cited to that you have to give deference to the decision at the education level. And so as to inject just that service dog regulation, as was requested by the plaintiffs at trial, would have suggested that that was the only accommodation, that that's the only accommodation. Okay, let's try another route here. When the jury instruction was requested pertaining to the regulation for public accommodation, you, I assume, you objected to it. What was your reasoning? Well, when the jury instruction was requested at the time of trial, Your Honor, it was actually requested under Title II, not under Title III. That was the initial objection on that basis. But beyond that? Well, and then beyond that, it was agreed by the court that Judge Mannion would go home, that he would review the law again at night, overnight, and come in and make his decision in the morning. And if you look at the trial record, Your Honor, he came in in the morning and he announced what his determination was on the charge. And there was no back-and-forth by counsel objections or anything like that at the time. And I'm not saying that there was a waiver here. I think that the objections were appropriately preserved the prior evening and that there was an agreement that the judge would go back and review things. But in the morning when he came in and advised us what his instructions were going to be, both counsel accepted that and we moved forward with our closing arguments. Were you surprised by the decision? I was not surprised, Judge, because, like Judge Mannion, I had an opportunity to sit through the trial. And, again, we can't lose sight of the fact this little girl attended the school, Judge. She attended the school before. She also missed 65 days. Well, she missed 65 days because of issues with surgery that she had. There was no proof at all on two things. One, Your Honor, that you mentioned that she was found, passed out on the floor, asleep on the floor. That's entirely untrue. There was no representation of that, no evidence of that in the record. There was argument made at the time of the closing argument that that happened, but that was completely untrue. It was not in the record at trial at all? That was not in the record at trial. What the record at trial showed was that the principal would take time and would help this little girl to sleep in her office on the floor and would stay there and would watch her. But she put pads down. It's not like she was just found laying in the hallway asleep. Nor was there any proof at trial, Your Honor, that she missed 65 days because of problems with seizure activity, nor was there any proof that she missed that because she was not allowed to attend with her service dog. Well, there was evidence that she didn't feel safe without him. It wasn't specifically as to this day versus this day versus this day, but there was a testimony by her mother as to her not feeling safe. Sure, there was, Your Honor, but there was also cross-examination of her mother where she was showing photos of the little girl out in the community without the service dog, and there was no explanation at all as to why she was out in the community without the service dog, without any adults around, and how did that compare to her not feeling safe or her mother saying that she did not feel safe. That's a jury question, and in this case the jury did not give that credibility. Isn't the problem that we don't know what the basis was for the jury's determination? And while you point to evidence from which a jury perhaps could have concluded that even if the requested accommodation was reasonable, that there was not necessity for it, but there's also evidence in the record that in third grade from J.A. 679-81, she was often having seizures at school with the principal calling home multiple times with the service dog not being there to assist, that in fourth grade, according to the joint appendix at 523-25, she missed 65 days due to increased seizures as well as surgery, and then again in fifth grade, increased seizures that were taking her away from her educational opportunities. A jury on that basis may have found meaningful participation. Because they weren't given an instruction as to reasonableness of accommodation, isn't the problem we have that we don't know what they found, whether the verdict was the result of a finding as to denial of meaningful participation or as to reasonableness of the accommodation requested? And doesn't that require a remand if they lacked the instruction necessary to make that decision? Especially when they ask for more context when they came back to the court. Well, I think in most, if not all, trials, you're not going to know the basis for the verdict. The verdict comes out, the answer to the verdict slips. So we're not going to have that analysis. It's my understanding of the law that even if we had that, that that would not be admissible on appeal, that you can't come in with an affidavit from a juror or a statement from a juror as to why they found what they found to learn what the basis would be for their verdict. Where the jury was not properly instructed on applicable law as to one of the items that it needed to find. I mean, at that point, there's error. You're trying to argue, as I understand it, that that error was harmless. And my question put another way is, how do we know it was harmless? Respectfully, Your Honor, I don't believe that I argued harmless error on the jury instruction. I think that was on the comparison between the PHRA and the ADA, which was an issue that was initially raised and addressed in the briefs. I don't think that's... But to me, the key, it seems that it would have mattered to the jury if the proposed instruction quoted the public entity or public accommodation regulation. Since either one, they're essentially the same for this purpose. And it seems that they were asking for some additional instructions, some additional context. So how can we say that that wasn't... If we think it should have been given as an instruction, how can we say this doesn't go back? Well, again, Judge, we don't know what the context was of the jury verdict. No one stuck around to talk to the jurors afterwards. We don't have any of that. And, again, I don't know that any of that would even be admissible in this case. But there were multiple... We don't need to know that. We assess harmlessness versus harmfulness. Correct. And here, I think what we're getting at is one would think that it was not harmless since they needed it. Since, in effect, they asked for something. Well, and without that, the jury still had evidence of multiple other accommodations that were offered and allowed for attendance. I think we're losing that issue, is that this little girl attended the school for two-and-a-half years and did very well, and that was not in dispute. So I don't know how we can say that this was not a 504 case and whether we have meaningful access or meaningful participation. That goes to the heart of the case and the heart of the issue. As Mr. Helfer pointed out, in Albany, granted it's a district court case, there's a lot of reference to the fact that having your physical therapy service animal is huge in terms of the law and the regulations and how it's perceived. So that's just not like having someone assist you with a feeding tube. It's different. Would you not concede that there is a difference in the law regarding the use of a service animal as an accommodation versus some other accommodation of getting you a smart board or having someone assist you? Would you not agree? I would agree, Your Honor, in general, yes. And again, I would circle back to that this was an education-based case and that you have to look at that in the context of this being an education-based case and whether or not the service dog was necessary for meaningful access to the school program.  In the Rehabilitation Act context, cited in Phil Kopp's amicus brief, that guidance from the Department of Education provided that if not allowing a student to bring a service dog into the classroom would effectively deny the student the opportunity to participate in or benefit from the education program, then the recipient school would be in violation of Section 504. Isn't that to say that with a denial of meaningful participation that this accommodation is one that is generally, if not per se, a reasonable accommodation? Well, I think that the statement that you just read, Your Honor, is the reason why Judge Mannion did not believe after sitting through the five days of trial that that type of instruction was warranted because there was meaningful participation, there were reasonable accommodations that allowed for that. So to offer an instruction like that simply on the issue of service dog would have suggested that that was the only accommodation that was reasonable. That's just not the case. I don't think I would quibble with you. There were accommodations offered, but the question is, and for the jury, were they reasonable? Correct. And so that's why we keep coming back to this instruction on the reasonable accommodation because it would seem that that would be in the wheelhouse of what this case is all about. And yet that particular instruction was denied. I realize I'm going back and forth. Anything you want to sum up in 30 seconds? No, Your Honor. Could we get a brief address to the PHRA claim, to that issue? Because you argue it's part and parcel of the dismissal of the ADA claim, but am I wrong in understanding that PHRA, in fact, would provide for damages and the PHRA also has its own regulations that address the requirement of service animals? Correct, Your Honor. So how could it be harmless to take out the PHRA claim when there was a remedy available and when the jury, at least on that basis, would have heard the instruction as a matter of law on what constitutes a reasonable accommodation? Well, two things, Your Honor. I think that we addressed this in our brief, is that the case law holds that the ADA, the PHRA, and 504 all share the same standard. So in this case, the plaintiffs had the opportunity to present all of their evidence under the standard that would have applied to the PHRA case, and the jury determined that there was no discrimination. So you're saying because of the discrimination finding, it wouldn't have impacted. But if we find that it has to go back for this instruction, the PHRA claim is then quite alive, is it not? If you make that decision, Your Honor, then I would agree with that assessment, yes. But on the record, that was tried in the court. There was no discrimination that was found, and that's the threshold requirement under the PHRA. That's my position. I wanted to ask you specifically about the instruction that was actually given because we've talked about what was omitted. But the instruction given says, for the failure to accommodate claim, plaintiffs have the initial burden of proving by a reponderance of the evidence that the requested accommodations they seek were reasonable. That is necessary to avoid discrimination on the basis of a disability. Isn't that instruction not simply omitting further description, but wrong in that it's defining reasonableness and necessity as one and the same? Well, and Your Honor, I think it goes on to further state that the plaintiffs must prove that but for the failure to accommodate, that the handicapped student was denied the benefit of attending the DePaul School. I think that that's the entire… It goes on to say the requested accommodations were, in other words, the requested accommodations were necessary to permit meaningful participation. Correct. And that is instructing the jury that the finding of reasonableness is the same as finding meaningful participation, which the Supreme Court has said is not the same finding to be made. Isn't that simply an erroneous instruction? Your Honor, I think that it's a fair reading of Section 504, nor was it objected to at the time of trial. So if you do believe that that was erroneous, then I think we have a waiver issue on that. This is the first time that that issue has ever been raised. Thank you very much. Jerome. Yes, thank you. I would just like to make a couple of points. First, Allied refers to the Regents of the University of Michigan case and deference to academic decisions. That was a substantive due process case, not a disability discrimination case. And beyond that, it only applies in situations where an institution is making a genuine academic decision. Here, MB's request to bring her service animal to school was not a request that the school modify its academic standards, waive testing requirements, or anything like that. And further, in the disability discrimination context, that decision in Regents doesn't get a school around its obligation to make reasonable accommodations. Okay, that was the third of the three arguments offered on the supplemental request. Yes, Your Honor. And then beyond that, again, the PHRA claim, the PHRA in the statutory text makes reference to the fact that somebody operating a public accommodation cannot discriminate against someone due to that person's use of a service animal. And it's in the statutory text. I believe that had the jury had an instruction to address it in statutory language, the jury certainly would have had a possibility of coming out differently there, despite the fact that generally the ADA, Section 504, and the PHRA are construed to have similar standards. So unless the Court has any further questions. Thank you very much. Thank you to both counsel. Very well presented arguments, and we'll take them under advisement. And I would ask counsel if we could have a transcript prepared of this oral argument, and the costs should be split. Thank you very much. Thank you. We'll get together with the clerk's office for that.